UNITED STATES DISTRICT COURT
FILED
SEP 30 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 21-CR-138 (JLS)

DIAMOND ALLEN,

Defendant.

---

**DECISION AND ORDER**

Defendant Diamond Allen moves to withdraw his guilty pleas to three counts of the superseding indictment. For the reasons below, his motion is denied.

**BACKGROUND**

Allen is charged in fourteen counts of a fifteen-count superseding indictment. *See* Dkt. 38. Generally, the charges relate to drugs, firearms, and Hobbs Act robbery. *See id.*

Jury selection was scheduled to begin on January 22, 2025. *See* Dkt. 264. The evening before, the Court learned that Allen might take a plea. Allen pled guilty, pursuant to a written plea agreement, the morning of jury selection. *See* Dkt. 290; Dkt. 291. In particular, he pled guilty to: Count 1 (conspiracy to possess with intent to distribute, and to distribute, 500 grams or of a mixture and substance containing cocaine, as well as 100 grams or more of a mixture and substance containing heroin); Count 8 (discharge of a firearm in furtherance of a drug-trafficking crime on August 7, 2019); and Count 12 (possession of a firearm in furtherance of a drug-trafficking crime on February 4, 2021). *See* Dkt. 290; Dkt.

291; *see also* Dkt. 38 (superseding indictment). After conducting a colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the Court accepted Allen's guilty pleas and deferred acceptance of the plea agreement. *See* Dkt. 345-3, at 57.[1]

On April 21, 2025, the Court received a letter from Allen dated April 15, 2025. Dkt. 347. On May 20, 2025, the Court held a status conference to address the letter, at which Allen's then counsel—who also represented him during plea negotiations and for the change of plea—stated that Allen wanted to withdraw his pleas and asked the Court to assign a new lawyer to represent Allen. *See* Dkt. 318. The Court appointed current counsel on May 29, 2025. *See* Dkt. 322.

Thereafter, the Court granted three motions by Allen to adjourn sentencing. *See* Dkt. 328; Dkt. 332; Dkt. 334. On December 4 and 5, 2025, the Government filed sentencing submissions, including a motion for an upward variance based on an uncharged murder that the Government alleges Allen is responsible for. *See* Dkt. 339; Dkt. 340; Dkt. 341; Dkt. 342.

On January 5, 2026, Allen moved to withdraw his guilty pleas and to adjourn sentencing. Dkt. 345. The Court set a briefing schedule on the motion to withdraw and adjourned sentencing without date. Dkt. 346. The Government opposed the motion to withdraw (Dkt. 358), Allen replied (Dkt. 359), and the Government filed a sur-reply (Dkt. 360).

---

[1] Page references to Dkt. 345-3, the transcript from the change-of-plea hearing, are to the numbering associated with the transcript itself and not the numbering automatically generated by CM/ECF.

The Court held a status conference on March 12, 2026, at which it requested a supplemental declaration from Allen regarding advice that he received from his former counsel between October 24, 2024, and January 22, 2025, about the sentencing implications of multiple Section 924(c) charges. *See* Dkt. 362. Allen filed the requested declaration (Dkt. 365), and the Government responded to it (Dkt. 366).

On April 27, 2026, the Court invited the parties' input on whether to order Allen's former counsel to provide an affidavit regarding "the precise advice and timing from Defendant's prior counsel regarding exposure to mandatory, 25-year consecutive 'stacking' after a trial and after a guilty plea." Dkt. 367. Both parties responded. Dkt. 368; Dkt. 369. The Court ordered former counsel to provide such an affidavit (Dkt. 370), which he did (Dkt. 372).

**DISCUSSION**

Allen seeks to withdraw his guilty pleas[2] entered on January 22, 2025. The Government opposes Allen's motion in all respects. Neither party addresses

---

[2] A slightly different standard applies when a defendant seeks to withdraw from a plea agreement but not to withdraw his guilty pleas. *See United States v. Lopez*, 385 F.3d 245, 255 (2d Cir. 2004) (borrowing Rule 11(d)'s "fair and just reason" standard but instructing district courts to (1) "ask whether there is credible evidence that the defendant did not freely and voluntarily enter into the plea agreement, either because he was coerced or improperly induced to accept its terms, or because he misunderstood them," and to (2) "determine the extent of any prejudice likely to be suffered by the Government"). Allen asks to withdraw his guilty pleas and withdraw from the plea agreement he entered. Dkt. 345-1 ¶ 2. Because Allen does not seek to withdraw *only* from the plea agreement, the modified standard does not apply here.

whether an evidentiary hearing is necessary. For the reasons below, the Court denies Allen's motion, in its entirety, without an evidentiary hearing.

## I. STANDARD TO WITHDRAW GUILTY PLEAS

A "guilty plea is no mere formality, but a 'grave and solemn act.'" *United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). The "detailed procedures" in Rule 11 of the Federal Rules of Criminal Procedure "are intended to ensure that such pleas are not 'merely tentative.'" *Id.* (quoting *Hyde*, 520 U.S. at 676).

Nevertheless, Rule 11(d) allows a defendant to withdraw a guilty plea, after a court accepts the plea but before sentencing, for "any fair and just reason."[3] Fed. R. Crim. P. 11(d)(2)(B). The defendant bears the burden of showing that such a reason exists. *See United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001); *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997). Whatever the basis for a defendant's motion, "the standard for withdrawing a guilty plea is stringent." *United States v. Gonzalez*, 647 F.3d 41, 57 (2d Cir. 2011) (citation omitted).

Whether to allow a defendant to withdraw a guilty plea is generally committed to the district court's discretion. *Arteca*, 411 F.3d at 319–20. Courts consider the following factors:

---

[3] Allen claims a "right to withdraw his guilty pleas . . . for no reason or any reason." Dkt. 345-2, at 6. He is incorrect. The Court "accept[ed] . . . Allen's guilty pleas[,] . . . defer[red] acceptance of the plea agreement pursuant to Rule 11(c)(3)(A)[, and] . . . adjudged [Allen] guilty of counts one, eight[,] and 12" at the change-of-plea hearing on January 22, 2022. Dkt. 345-3, at 57. The fair-and-just-reason standard, therefore, applies.

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea.

*United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004). In addition, courts may consider whether the defendant "has raise[d] a significant question about the voluntariness of the original plea." *Id.* at 103 (citation modified).

When a motion to withdraw argues primarily "that the plea was not voluntary, . . . the court must focus on voluntariness." *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (citation modified). Not "all inducements for a defendant to plead guilty render either a plea or the consequent waiver of the right to trial by jury involuntary." *Id.* (citation modified). Impermissible inducements that may render a plea involuntary include "threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps . . . bribes." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)) (citation modified).

In addition, ineffective assistance of counsel "during plea negotiations can invalidate a guilty plea[,] and make . . . withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of [the] defendant's decision to plead guilty." *Arteca*, 411 F.3d at 320. A defendant alleging ineffective assistance of counsel must show that: (1) "counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms"; and (2) "it is reasonably likely that prejudice

occurred—i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984)). In the context of plea negotiations, a defendant satisfies the second prong by showing "that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

An evidentiary hearing "may be appropriate where a defendant has demonstrated factual issues surrounding the voluntariness . . . of his plea." *United States v. Miller*, 3 F. Supp. 2d 376, 380 (W.D.N.Y. 1998). But "no hearing is required 'if the movant's allegations merely contradict his earlier statements made under oath at his plea allocution.'" *Id.* (quoting *Maher*, 108 F.3d at 1529) (citation modified).

## II. <u>ALLEN MAY NOT WITHDRAW HIS GUILTY PLEAS</u>

### A. Grounds Related to Assistance of Counsel

Allen claims that he received ineffective assistance of counsel and, as a result, should be allowed to withdraw his guilty pleas. This argument fails.

Because Allen "ple[d] guilty unconditionally while represented by counsel," he "may not assert independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea[s]." *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (citation modified). In other words, an ineffective assistance of counsel claim may provide grounds to withdraw Allen's guilty pleas only if the purported deficient performance occurred "during plea

negotiations" and "to the extent that the . . . deficient performance undermine[d] the voluntary and intelligent nature of [his] decision to plead guilty. *See Arteca*, 411 F.3d at 320.

Judged against this standard, Allen provides no basis to withdraw his pleas.

i. Advice related to Section 924(c) counts

Allen argues that he received incorrect advice from his former counsel about the implications of multiple Section 924(c) convictions.

In his letter and declarations, Allen uses "stack" and "stacking" to describe multiple Section 924(c) convictions. The use of this term generates confusion. To clarify the issue, the Court begins by discussing the structure and evolution of authority regarding multiple Section 924(c) convictions and associated penalties.

In its current form, Section 924(c) provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years; [and] . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. §§ 924(c)(1)(A)(i)–(iii). It further provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D)(ii). The current statute also includes a recidivism enhancement, which provides that, where a Section 924(c) violation "occurs *after a prior conviction under this subsection has*

*become final*, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C. § 924(c)(1)(C)(i) (citation modified).

The recidivism enhancement in a prior version of the statute functioned differently. It stated: "In the case of his second or subsequent [Section 924(c)] conviction . . . , such person shall be sentenced to imprisonment for twenty years." *Deal v. United States*, 508 U.S. 129, 130 (1993) (citation modified). The Supreme Court interpreted this prior recidivism enhancement to require an enhanced mandatory consecutive penalty "for each and every [Section] 924(c) conviction beyond a defendant's first—*even if those convictions were part of the same criminal prosecution*." *Hewitt v. United States*, 606 U.S. 419, 423 (2025) (citing *Deal*, 508 U.S. at 132–37) (citation modified).

The 2018 First Step Act changed that prior recidivism enhancement to its current form, abrogated the Supreme Court's decision in *Deal*, "clarified that district court judges are *not* required to imposed stacked 25-year sentences[4] when sentencing first-time [Section] 924(c) offenders," and established that first-time offenders are subject only to the mandatory sentences provided in Sections 924(c)(1)(A)(i) through (iii). *Hewitt*, 606 U.S. at 424 (citation modified).

In other words, a defendant with no prior, final Section 924(c) conviction who is charged with multiple Section 924(c) violations in the same indictment no longer is subject to the statute's recidivism enhancement. But such a defendant still *is*

[4] When the Supreme Court decided *Deal* in 1993, the recidivism enhancement was a mandatory 20 years; in 1998, Congress increased that enhancement to a mandatory 25 years. *Hewitt*, 606 U.S. at 423 n.1.

subject to the mandatory consecutive sentences that apply for possessing, brandishing, or discharging a firearm in furtherance of a drug-trafficking crime or a crime of violence, as provided in Sections 924(c)(1)(A)(i) through (iii) and (D)(ii). *See United States v. Byam*, No. 12-CR-586-01 (OEM), 2024 WL 1556741, at *1 (E.D.N.Y. Apr. 10, 2024) (recognizing that First Step Act "eliminated so-called 'stacking' of [Section] 924(c) mandatory minimum sentences for second or consecutive [Section] 924(c) counts contained in the same indictment," and that, under the current version of the statute, the defendant's "two [Section] 924(c) charges [for brandishing a firearm] would only accrue 14 years of mandatory sentence time").

Here, the superseding indictment charges Allen in four separate Section 924(c) counts, as follows:

- In Count 2, with possessing a firearm in furtherance of a conspiracy to possess with intent to distribute, and to distribute, various quantities of various drugs, between 2016 and September 2021, *see* Dkt. 38, at 1–2, which subjects him to at least five years of imprisonment, to run consecutively to all other counts of conviction, *see* 18 U.S.C. §§ 924(c)(1)(A)(i), (D)(ii);
- In Count 5, with brandishing a firearm during and in relation to a Hobbs Act robbery on October 15, 2018, *see* Dkt. 38, at 3–4, which subjects him to at least seven years of imprisonment, to run consecutively to all other counts of conviction, *see* 18 U.S.C. §§ 924(c)(1)(A)(ii), (D)(ii);

- In Count 8, with discharging a firearm during and in relation to a conspiracy to distribute marijuana on August 7, 2019, *see* Dkt. 38, at 1, 5–6, which subjects him to at least ten years of imprisonment, to run consecutively to all other counts of conviction, *see* 18 U.S.C. §§ 924(c)(1)(A)(iii), (D)(ii); and
- In Count 12, with possessing a firearm in furtherance of a conspiracy to possess with intent to distribute, and to distribute, various drugs, and to maintain a drug-involved premises, between January 2021 and February 2021,[5] *see* Dkt. 38, at 6–8, which subjects him to at least five years of imprisonment, to run consecutively to all other counts of conviction, *see* 18 U.S.C. §§ 924(c)(1)(A)(i), (D)(ii).

The Government advised Allen of this sentencing exposure at a *Frye-Lafler* colloquy on October 24, 2024. Dkt. 356, at 4.

After describing each charge, the Government advised that, if convicted on all counts against him in the superseding indictment, Allen would face an aggregate term of 32 mandatory years of imprisonment. *See id.* This total is comprised of five years on Count 2, plus seven years on Count 5, plus ten years on Count 8, plus five years on Count 12, plus five years on the drug conspiracy in Count 1. *See id.*; *see also* 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii), (D)(ii); 21 U.S.C. § 841(b)(1)(B).

---

[5] Count 12 also charges that Allen possessed that firearm in furtherance of a possession with intent to distribute fentanyl charge on February 4, 2021, and a maintaining a drug-involved premises charge between January 2021 and February 2021. *See* Dkt. 38, at 7, 8.

The information provided to Allen at the *Frye-Lafler* colloquy was correct under the current, post-First Step Act version of Section 924(c). The sentencing exposure presented during that colloquy did not apply the statute's recidivism enhancement—and correctly so—because Allen did not have a final Section 924(c) conviction. *See* 18 U.S.C. § 924(c)(1)(C)(i). After hearing all of this information, Allen affirmed that he "discuss[ed] all the details that [he] just heard from [the Government] with his lawyer." Dkt. 356, at 7.

Allen pled guilty to two Section 924(c) offenses: Count 8 and Count 12. Dkt. 290; Dkt. 345-3, at 9–10.[6] The plea agreement that Allen signed detailed the maximum penalties associated with each charge—specifically, on Count 8, a "mandatory minimum . . . term of imprisonment of 10 years . . . , such sentence to be imposed consecutively to any other term of imprisonment" and, on Count 12, "a mandatory minimum . . . term of imprisonment of 5 years . . . , such sentence to be imposed consecutively to any other term of imprisonment." Dkt. 290, at 2. The Court also covered these mandatory penalties on the record during the plea colloquy, and Allen stated that he understood. Dkt. 345-3, at 20 (Count 8); *id.* at 22 (Count 12).

During the plea colloquy, the Court explained to Allen how the various mandatory minimum terms of imprisonment interacted with each other. As to Count 8:

> THE COURT: And . . . this term of imprisonment must run

[6] Allen also pled guilty to Count 1, which has a five-year mandatory minimum term of imprisonment. 21 U.S.C. § 841(b)(1)(B); Dkt. 290 ¶ 1(a); Dkt. 345-3, at 18.

> consecutive, that means on top of, to the terms of imprisonment imposed on other counts. In other words, I must sentence you to at least another ten years on top of whatever term of imprisonment that I impose on count one. And the term of imprisonment on count eight will not begin to run until the term of imprisonment on count one is complete. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 21. And as to Count 12:

> THE COURT: There's a mandatory minimum term of imprisonment of five years on Count 12. And that term must run consecutive to the terms of imprisonment imposed on counts one and eight. In other words, I must sentence you to at least another five years on top of whatever terms of imprisonment that I impose on counts one and eight. And the term of imprisonment on Count 12 will not begin to run until the terms of imprisonment on counts one and eight are complete. Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 22–23.

The Court then summarized: "In other words, looking at [Counts 1, 8, and 12] all together, the mandatory minimum—when you look at all of these together—is 20 years. Do you understand that?" *Id.* at 23. Allen responded: "Yes, Your Honor." *Id.*

Against this backdrop, Allen argues that his former counsel provided him with incorrect advice about the sentencing implications of multiple Section 924(c) convictions. His various statements on this issue demonstrate a misunderstanding of the First Step Act's implications for such multiple convictions.

For example, Allen states that his former counsel "erroneously advised [him] that there was no argument that [he] could make to avoid 'stacking' and the increased sentencing guideline range found in the Plea Agreement." Dkt. 345-1 ¶ 4. The increased guidelines range to which Allen refers is the addition of "ten and five year consecutive sentences in Counts 8 and 12 to the 5 year minimum sentence applicable to Count 1." *Id.* ¶ 3. According to Allen, "the First Step Act . . . removed stacking of multiple sentences for weapons possession charges in one case," but his former counsel advised him that "multiple gun charges could occur in [his] case if [he] went to trial." Dkt. 365 ¶ 5.[7]

Allen summarizes: "to convince me to plead guilty, I believe [my lawyer] was misinformed[,] or at least misinformed me[,] about the risk of additional, multiple . . . sentences for gun charges if I decided to go to trial, despite the changes in the First Step Act." Dkt. 365 ¶ 10.

Allen's statements, which do not conflict with the statements of his former counsel, *see* Dkt. 372,[8] illustrate that his former counsel correctly advised him about

[7] Along the same lines, Allen states: "I was . . . concerned about what [my lawyer] told me about higher multiple stacking penalties I faced if I went to trial, despite what I told [him] about what other inmates had told me about how the First Step Act did away with multiple stacking of gun sentences in one case." Dkt. 365 ¶ 8. These statements are consistent with Allen's original complaint about his convictions, raised in his April 15, 2025 letter. *See* Dkt. 347, at 1–2 ("In my view it would be a manifest . . . injustice for the court[] to let such a sentence be imposed on a 1st time offender of 924(c) when the law states otherwise.").

[8] Allen's former counsel stated that he recalled discussing the First Step Act's impact of on multiple Section 924(c) convictions with Allen during the course of his representation but could not recall the exact content of those conversations on specific dates. *See* Dkt. 372 ¶¶ 8, 11.

the sentencing implications of multiple Section 924(c) convictions. The First Step Act did not eliminate *all* mandatory consecutive imprisonment provisions in the statute—*e.g.*, the penalties provided in Sections 924(c)(1)(A)(i) through (iii) and (D)(ii). It abrogated only the prior recidivism enhancement. Whether he went to trial or pled guilty, Allen would be subject to the applicable penalty for each count, as specified in Sections 924(c)(1)(A)(i), (ii), (iii), and (D)(ii). Allen was advised of that at the *Frye-Lafler* colloquy and during the plea colloquy. *See* Dkt. 356, at 4; Dkt. 345-3, at 18–23. There is no evidence that Allen was told of a risk that Section 924(c)'s prior recidivism enhancement would apply. *See* Dkt. 372 ¶ 11 (former counsel stating that he "recall[ed] advising . . . Allen about the ameliorative provisions regarding 'stacking' in the First Step Act").

Because Allen did not demonstrate that his former counsel's advice about multiple Section 924(c) convictions fell below an objective standard of reasonableness, he may not withdraw his guilty pleas on this basis.[9]

ii. <u>Assistance of counsel during plea negotiations</u>

Allen cites additional conduct by his former counsel during plea negotiations as a basis to withdraw his guilty pleas. The transcript from the plea colloquy refutes each claim.

---

[9] The Court also considered—and rejects—Allen's arguments regarding *Barrett v. United States*, 607 U.S. 128 (2026). That case does not apply here, where the two Section 924(c) convictions are for different conduct on different dates. And the case was decided in January 2026: more than a year after Allen's guilty pleas. In other words, *Barrett* had no bearing on the Allen's former counsel's advice regarding sentencing exposure or Allen's decision to plead guilty.

First, Allen states that, during the plea hearing, his former counsel "represented . . . that a sentence between thirteen years . . . and twenty years was a probable outcome." Dkt. 345-1 ¶ 7;[10] *see also* Dkt. 365 ¶ 9 (former counsel told Allen "he would push for a sentence of 13 years with a plea, even though it was not 'on paper'"). The Court advised Allen of the maximum penalties associated with each count, *see* Dkt. 345-3, at 18, 20–23, as well as the aggregate effect of those penalties—specifically, a "mandatory minimum . . . [of] 20 years," *see id.* at 23. And the Court advised Allen that, under the plea agreement, the aggregate guidelines imprisonment range was "20 years and ten months at the low end, and 22 years and three months at the high end," and that both he and the Government could ask for a sentence outside the guidelines range, within the statutory constraints.[11] Dkt. 345-3, at 45–46.

After all of that, Allen confirmed that he did not have any questions about the sentence he might receive. *Id.* at 46. Later, both Allen and his lawyer confirmed that, aside from the sentencing provisions in the plea agreement and a general discussion of sentencing considerations, no one promised Allen a specific

---

[10] Allen's declaration contains two paragraph sevens. *See* Dkt. 345-1. This quotation references the second paragraph seven.

[11] The plea colloquy confirms that twenty years of imprisonment was a possible outcome but makes clear that any term of imprisonment lower than that was impossible under the plea agreement and the relevant statutes. *See* Dkt. 345-3, at 23. The plea agreement also correctly recites Allen's sentencing exposure. It states the maximum term of imprisonment associated with each count, as well as the aggregate imprisonment range under the sentencing guidelines—all of which total at least twenty years. Dkt. 290 ¶¶ 1(a), 1(b), 1(c), 13.

sentence if the Court accepted his guilty pleas. *Id.* at 50, 52; *see also id.* at 14–15.[12]

Second, Allen claims that his former counsel did not explain that the plea agreement "tied [his] hands," even though his lawyer knew Allen "challenged the factual basis for the change of pleas on Counts 8 and 12."[13] Dkt. 345-1 ¶ 8. But at the plea colloquy, the Court noted that Allen and the Government "agree[d] to certain facts regarding the charges that [he] . . . plan[ned] to plead guilty to";[14] the Government also recited all the facts Allen agreed to and explained how it would prove those facts at trial. Dkt. 345-3, at 26–38. Allen confirmed that he was pleading guilty because he "did the things that the plea agreement sa[id] that [he] did and that [were] charged in counts one, eight[,] and 12 of the superseding indictment." *Id.* at 38. In other words, Allen adopted the factual basis for each plea.

Third, Allen claims that the his former counsel "work[ed] together" with the prosecutors and case agents "to persuade [him] to change [his] plea and give up [his] right to proceed to a jury trial." Dkt. 345-1 ¶ 6; *see also id.* ¶¶ 5, 7.[15] But Allen's

---

[12] Allen also confirmed that that no one made "any promises, representations or guarantees to [him], other than what [was] in the plea agreement that [he] signed." *Id.* at 50. His lawyer agreed. *Id.* at 52.

[13] Relatedly, Allen argues that his former counsel did not advise him of defenses to Counts 8 and Count 12. Dkt. 359, at 2. The plea colloquy refutes this claim, too. *See* Dkt. 345-3, at 26 ("THE COURT: Did you discuss the facts of your case, possible defenses, and the possible punishment with your lawyer? THE DEFENDANT: Yes, Your Honor.").

[14] The plea agreement lists several paragraphs of facts that "[t]he defendant and the government agree to." Dkt. 290 ¶ 4.

[15] This reference is to the first paragraph seven in Dkt. 345-1.

responses under oath at the plea hearing demonstrate otherwise. For example, Allen confirmed that no one was "forcing [him] to plead guilty" and no one tried to threaten him, his family, or anyone close to him to get him to plead guilty. Dkt. 345-3, at 15. He stated that he understood that the decision to plead guilty was his decision and understood that he should "[n]ot [do] what [he] think[s] [his] lawyer wants [him] to do and not what [he] think[s] anyone else wants [him] to do." *Id.* Allen confirmed that his decision to plead guilty was voluntary and of his own free will. *Id.* He also said that he did not have questions about the plea agreement and did not need more time to discuss it with his lawyer. *Id.* at 14. And at the end of the hearing, Allen agreed that his lawyer "fully advised [him] concerning this case and the consequences of these pleas," that he had enough time to discuss the case with his lawyer, and that there was no reason the Court should not accept his guilty pleas. *Id.* at 53–54.

Allen had plenty of opportunities during the plea hearing to raise concerns about his lawyer's conduct and advice during plea negotiations. His current claims about his lawyer "are . . . contradicted by his prior sworn statements," amount to "little more than conclusory allegations unsupported by the record" and, therefore, do not justify withdrawal of his guilty pleas. *See Miller*, 3 F. Supp. 2d at 381 (citing cases).[16]

---

[16] Nor do Allen's claims about his lawyer's purported statements regarding a sentence of less than twenty years' imprisonment constitute a Rule 11 violation. *See United States v. Delvalle*, 94 F.4th 264, 267–68 (2d Cir. 2024) (no Rule 11 violation where defendant "explicitly disclaimed having received any promises, apart from those set forth in his plea agreement"; noting "the mischief that was

Because Allen did not show that his guilty pleas resulted from ineffective assistance of counsel, his claims provide no basis for him to withdraw his pleas.

iii. Assistance of counsel during pretrial phase of proceedings

According to Allen, his former counsel also provided deficient representation during pretrial proceedings. He claims that his lawyer "barely communicated" with him and "refused to review discovery with [him] in a private setting." Dkt. 345-1 ¶ 9; *see also* Dkt. 347 (counsel told Allen he was not allowed to review any discovery).[17]

These independent claims relating to the alleged deprivation of constitutional rights that occurred prior to the entry of the guilty plea[s]" are unavailable to Allen because he "ple[d] guilty unconditionally while represented by counsel." *See Torres*, 129 F.3d at 715 (citation modified) (declining to address argument that "counsel was constitutionally ineffective by failing to interview and call certain witnesses at a pretrial suppression hearing").

iv. Prejudice prong of ineffective assistance claim

The Court need not reach the second, prejudice prong of an ineffective assistance claim—*e.g.*, whether Allen demonstrated "a reasonable probability that

likely to ensue if a defendant could withdraw his plea based on nothing more than a claim that his lawyer had misled his client into being too hopeful of a light sentence" (citation modified)).

[17] In his letter to the Court, Allen also complained about his former counsel's failure to file motions or do any pretrial investigation. Dkt. 347, at 1. He did not include those arguments in his motion. In any event, they do not change the Court's analysis.

were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial"—because Allen did not satisfy the first prong. *See Arteca*, 411 F.3d at 320. In any event, nowhere does Allen state a desire to proceed to trial. *See generally* Dkt. 345-1; Dkt. 347; Dkt. 365. *See also Arteca*, 411 F.3d at 322 (district court did not err in concluding defendant did not satisfy the second prong, even where defendant "filed an affidavit swearing . . . that he would indeed have gone to trial").

**B. Purported Rule 11 Violation**

Allen also argues that he should be permitted to withdraw his guilty plea to Count 8 because there was an insufficient factual basis and, therefore, his plea to that count did not comply with Rule 11.

Relevant to this argument are the charges in Counts 1 and 8. Count 8 charges Allen with discharging a firearm during and in relation to, and in furtherance of, . . . "a conspiracy to distribute marijuana on or about July 28, 2019, that resulted in the shooting of Individual 1." Dkt. 38, at 5–6. Count 1 charges Allen with conspiracy to possess with intent to distribute, and to distribute, marijuana, cocaine, heroin, and oxycodone.[18] Dkt. 38, at 1–2. Allen pled guilty to Count 8 in its entirety. Dkt. 345-3, at 55; *see also* Dkt. 290, at 2. As to Count 1, he pled guilty to conspiracy to possess with intent to distribute and to distribute a mixture or substance containing 500 grams or more of cocaine and a mixture or

---

[18] Count 1 charges specific quantities of cocaine and heroin. Dkt. 38, at 1–2. Those details are not relevant to this motion.

substance containing 100 grams or more of heroin. Dkt. 345-3, at 55; *see also* Dkt. 290 ¶ 1(a).

Allen did not plead guilty to the marijuana objective of Count 1, and he is not convicted of the predicate crime for Count 8. But a guilty plea to the predicate crime is not required where a factual basis for the predicate crime exists. *See, e.g.*, *United States v. Stoney*, 62 F.4th 108, 112 & n.3 (3d Cir. 2023) ("Several other Circuit courts have . . . held that the record may establish the predicate crime for a [Section] 924(c) guilty plea. We join those Circuits."); *United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989) (defendant's "admission to the court that he possessed 88 grams of cocaine and had trafficked in the drug, the government's proffer of proof to that effect, and [defendant]'s guilty plea were sufficient to establish . . . guilt of a drug trafficking offense as an element of the offense under [S]ection 924(c)(1)").

But Allen admitted to numerous facts that establish the predicate crime. In particular:

- "beginning in or about 2016, and continuing through 2019, [he] agreed with [a co-defendant] and others to obtain cocaine, heroin[,] and marijuana in and around the City of Buffalo and travel to Olean, New York, to distribute cocaine and heroin," Dkt. 345-3, at 27;
- "during this period, he personally travelled to Olean, New York, on approximately a weekly basis and during each trip, sold cocaine, heroin[,] and marijuana, at various premises in Olean, New York," *id.*;

- "others also distributed cocaine, heroin[,] and marijuana as part of the conspiracy on a weekly basis," *id.* at 27–28;
- he "knowingly and intentionally conspired with MR and others to distribute marijuana," *id.* at 28;
- "[a]s part of, and in furtherance of, the conspiracy to distribute marijuana, [he] agreed to find the person responsible for the [July 28, 2018] shooting [of MR by a customer during MR's sale of marijuana in furtherance of that conspiracy] and exact revenge," *id.* at 28–29;
- "he discharged the firearm . . . on August 7, 2019, as revenge for the shooting of MR, to protect [his] associates and co-conspirators of his drug conspiracy" and "because members of the conspiracy paid [him] to shoot the people responsible for the July 28, 2019[] shooting," *id.* at 29.[19]

After the Government summarized these facts, Allen confirmed that everything the prosecutor said about Allen, his conduct, and his intent were true.[20] Dkt. 345-3, at 31.

The Government then proffered how it would prove those facts at trial. *See* Dkt. 345-3, at 32–36. After that, Allen confirmed that he was "pleading guilty . . . because [he] did the things that the plea agreement says that [he] did and that are

---

[19] *See also* Dkt. 290 ¶¶ 4(b)–(e) (paragraphs of the plea agreement where Allen admitted to the facts recounted above).

[20] Allen's allocution, though less detailed, is not inconsistent with these facts. *See id.* at 40–41 (Allen "did discharge a firearm at [an individual he was worried about]," and the reason Allen "got into it" with that person "did start over marijuana").

charged in counts one[] [and] eight . . . of the superseding indictment." *Id.* at 38.

These facts support a conviction for the predicate crime here: conspiracy to distribute marijuana. Specifically, the Court was—and remains—satisfied that a sufficient factual basis exists to conclude that two or more people entered an unlawful agreement to distribute marijuana, that Allen knew the general nature and extent of that agreement, and that Allen knowingly and willfully joined that agreement. *See United States v. Davis*, 632 F. App'x 8, 10 (2d Cir. 2015); *United States v. Santos*, 541 F.3d 63, 70–71 (2d Cir. 2008); *United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1989).

These same facts establish that Allen possessed and discharged the firearm in furtherance of the conspiracy to distribute marijuana. Allen agreed that he possessed and discharged a firearm on August 7, 2019, to retaliate for the shooting of his co-conspirator during a marijuana sale, thereby protecting his co-conspirators in that conspiracy. *See* Dkt. 345-3, at 29; Dkt. 290 ¶¶ 4(d), (e). Considered together, the facts Allen agreed to, the Government's full proffer, and Allen's allocution establish the "in furtherance of" element of Count 8.[21] *See United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) ("the government must establish the

---

[21] The Court's use of "in connection with," rather than "in furtherance of" on one occasion during the colloquy does not alter this conclusion. *Compare* Dkt. 345-3, at 40 ("THE COURT: All right. And did that discharge of the firearm occur in connection with the drug conspiracy?"), *with id.* (asking Allen to explain what he did as to "discharging a firearm in furtherance of a drug trafficking crime"), *and id* at 19 (explaining that, as to Count 8, the Government must prove that Allen "knowingly used or carried or knowingly possessed a firearm in furtherance of a drug trafficking crime," and that Allen "discharged that firearm in furtherance of that drug trafficking crime").

existence of a specific 'nexus' between the charged firearm and the charged drug selling operation"); *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) ("Under this Court's precedent, the requirement in [Section] 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." (citation modified)).

Allen's plea to Count 8 complied with Rule 11, and he may not withdraw his plea to that count.

### C. Remaining *Schmidt* Factors

The Court will conclude by addressing the remaining factors outlined in *Schmidt*, 373 F.3d at 103. First, Allen does not assert his innocence. *See* Dkt. 345-1; Dkt. 347; Dkt. 365.

Second, significant time has passed between Allen's guilty pleas and his motion to withdraw. He pled guilty on January 22, 2025. Dkt. 291. He first expressed a desire to withdraw his guilty pleas in a letter dated April 15, 2026—almost three months later. Dkt. 347. In response to that letter, on May 29, 2025, the Court assigned new counsel to represent Allen. Dkt. 322. But Allen did not move to withdraw his pleas until January 5, 2026—almost a year after he entered the pleas and one month after the Government moved for an upward variance at sentencing. *See* Dkt. 339; Dkt. 345. This chronology undercuts Allen's argument that ineffective assistance of his former counsel rendered his pleas involuntary. *See Doe*, 537 F.3d at 213 ("Whereas a swift change of heart may indicate a plea made in haste or confusion, . . . the fact that the defendant waited five months to file his

motion strongly supports the district court's finding that his plea was entered voluntarily." (citation modified)).

The Court need not consider the final *Schmidt* factor—prejudice to the Government—because Allen did not set forth valid grounds to withdraw his pleas. *See Hirsch*, 239 F.3d at 225 ("When considering a motion to withdraw a plea, a court should consider the potential prejudice to the government, but only if the defendant has set forth sufficient grounds to withdraw the plea."). Nevertheless, the Court recognizes the prejudice highlighted by the Government. *See* Dkt. 358, at 21–22.

In sum, Allen does not demonstrate a fair and just reason to withdraw his pleas under Rule 11(d)(2)(B).

## III. <u>NO EVIDENTIARY HEARING IS REQUIRED</u>

Because Allen did not demonstrate the existence of factual issues regarding the voluntariness of his guilty pleas, the Court resolves his motion without an evidentiary hearing.[22] *See Miller*, 3 F. Supp. 2d at 380 ("no hearing is required 'if the movant's allegations merely contradict his earlier statements made under oath at his plea allocution'") (quoting *Maher*, 108 F.3d at 1529 (citation modified))); *see also Torres*, 129 F.3d at 715 ("A motion to withdraw a guilty plea may be denied without a hearing where the defendant's allegations 'merely contradict the record,' are 'inherently incredible,' or are 'simply conclusory.'" (citation modified)).

---

[22] The Court accepted and considered affidavits from Allen and his former counsel and determined that the those affidavits do not create a material factual issue, for the reasons discussed above.

## CONCLUSION

For all of these reasons, the Court DENIES Allen's motion to withdraw his guilty pleas (Dkt. 345).

SO ORDERED.

Dated: September 30, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE